NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1424
_____

UNITED STATES OF AMERICA

v.

DARRYL PETLOCK,
Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-12-cr-00623-001)
District Judge: Honorable Susan D. Wigenton
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 10, 2020

Before:  McKee, Porter, Fisher, *Circuit Judges*.

(Filed: February 11, 2021)
_____

OPINION[*]
_____

FISHER, *Circuit Judge*.

In this appeal, *pro se* Appellant Darryl Petlock alleges a variety of errors when the

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

District Court declined to dismiss the Parole Office's petition to revoke his term of supervised release, allowed him to proceed *pro se* at the revocation hearing, and declined to reduce his sentence for time spent in state custody. We will affirm.[1]

Petlock first argues that the District Court erred in granting his request to proceed *pro se* at the revocation hearing. A person on supervised release may waive his right to counsel in this context.[2] "[I]n order for due process to be satisfied . . . the defendant's waiver of rights under Rule 32.1 must be knowing and voluntary under a 'totality of the circumstances.'"[3] "This standard does not require 'rigid or specific colloquies with the district court'" nor any "'particular mantra.'"[4] Rather, the District Court was simply required to "'advise [Petlock] of both the rights afforded him . . . and the consequences of relinquishing those rights.'"[5]

It did just that. After Petlock expressed his desire to represent himself, the District Court engaged in an extensive colloquy which established that he was a competent, college-educated adult, with a paralegal certificate and coursework in criminal law, who had effectively represented himself in the state court prosecution which predicated the

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3583(e)(3). We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's decision to revoke supervised release for an abuse of discretion, supportive factual findings for clear error, and legal issues *de novo*. *United States v. Maloney*, 513 F.3d 350, 354 (3d Cir. 2008).

[2] *United States v. Manuel*, 732 F.3d 283, 291 (3d Cir. 2013) (citing Fed. R. Crim. P. 32.1).

[3] *Id.* (quoting *United States v. Hodges*, 460 F.3d 646, 651-52 (5th Cir. 2006)).

[4] *Id.* (quoting *Hodges*, 460 F.3d at 651-52).

[5] *Id.* (quoting *Hodges*, 460 F.3d at 651-52).

revocation petition. Without equivocation, he stated it was his "personal desire" to proceed without counsel, a decision he made "freely" and with understanding of the rights he was relinquishing and the attendant consequences.[6] Thus, the Court properly ascertained Petlock's "'comprehension of the charges against him and . . . his appreciation of the nature of the rights afforded him,'"[7] and did not err in granting his request to proceed *pro se*.

Petlock next alleges a variety of errors in urging us to conclude that the District Court wrongly revoked his term of supervised release. Petlock was granted supervised release following drug-trafficking and firearms convictions in federal court. He violated a condition of his release when he committed aggravated manslaughter, to which he pled guilty in state court. He now complains about the validity of his state conviction. However, he never challenged his conviction on direct appeal or federal habeas review and a "supervised release revocation proceeding is not the proper forum in which to attack the conviction giving rise to the revocation."[8]

Petlock's critiques of the federal court proceedings also fail. He first argues that the District Court lacked jurisdiction to adjudicate the revocation petition, because the revocation arrest warrant "was not based upon Probable Cause and . . . was not supported

---

[6] Supp. App. 33.
[7] *Manuel*, 732 F.3d at 291 (quoting *Hodges*, 460 F.3d at 652).
[8] *United States v. Hofierka*, 83 F.3d 357, 363 (11th Cir. 1996) (collecting cases).

by oath or affirmation."[9] The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation."[10] Courts disagree about whether this requirement extends to warrants issued for violating a condition of supervised release.[11] We, however, need not decide this question, because the papers here would satisfy the oath or affirmation requirement if it did apply. In a 2012 Petition for Warrant or Summons for Offender under Supervision, Petlock's probation officer declared under penalty of perjury that Petlock violated a condition of his supervised release—the requirement that he not commit another crime—because he was charged with crimes including first degree murder. An Amended Petition (also backed by sworn declaration) was filed after Petlock ultimately pled guilty to manslaughter in state court. These sworn statements satisfy the Fourth Amendment, which "requires *only . . .* sufficient information, [provided] under oath or affirmation, which would support an independent judgment that probable cause exists for the warrant's issuance."[12]

Petlock next complains of an "unconstitutional delay" when the District Court

---

[9] Appellant's Br. at 55.

[10] U.S. Const. amend. IV.

[11] *See United States v. Vargas-Amaya*, 389 F.3d 901, 902-05 (9th Cir. 2004) (Fourth Amendment requirement applies in the supervised release context); *United States v. Collazo-Castro*, 660 F.3d 516, 519 (1st Cir. 2011) (Fourth Amendment does not apply); *United States v. Garcia-Avalino*, 444 F.3d 444, 447 (5th Cir. 2006) (Fourth Amendment does not apply).

[12] *United States ex rel. Gaugler v. Brierley*, 477 F.2d 516, 522 (3d Cir. 1973); *see also United States v. Bueno-Vargas*, 383 F.3d 1104, 1111 (9th Cir. 2004) ("[S]igning a statement under penalty of perjury satisfies the standard for an oath or affirmation.").

waited to adjudicate the revocation petition until his state court charges were resolved.[13] To the contrary, it is "reasonable for the District Court to wait for the adjudication of the state court charges before proceeding with the revocation hearing."[14] Petlock also claims he was never given numerous documents, including the Amended Petition and supposed *Brady* material.[15] The record belies this claim. At his initial appearance in the revocation proceedings, the Amended Petition's charges were read to Petlock and his counsel acknowledged that Petlock was "satisfied that he understands the charges against him."[16] He also fails to identify the purported *Brady* material left undisclosed or how any such items could have advanced a colorable defense to the petition, which was predicated upon his own guilty plea.[17]

Petlock raises a variety of other claims, which we have examined and conclude are unfounded. Some lack a basis in fact. He argues that after granting his motion to proceed *pro se*, the District Court "forced an Immediate Hearing" and "forced [him] to file all motions without discovery."[18] In reality, it scheduled his revocation hearing for three months later. Petlock claims he was "detain[ed] . . . for a prolonged period of time

---

[13] Appellant's Br. at 34.

[14] *United States v. Poellnitz*, 372 F.3d 562, 571 (3d Cir. 2004).

[15] *Brady v. Maryland*, 373 U.S. 83 (1963).

[16] Supp. App. 18.

[17] *See Moody v. Daggett*, 429 U.S. 78, 80 (1976) ("[A] guilty plea of manslaughter . . . constituted obvious violations of the terms of . . . parole.").

[18] Appellant's Br. 24.

without a hearing,"[19] but he actually consented to detention with reservation of the right to request bail at a later time. He claims the District Court deprived him of a preliminary hearing, ignoring that he expressly waived his right to that hearing.

Other claims Petlock raises lack a basis in the law. He offers no authorities that establish his purported right to counsel as soon as the revocation detainer and petition were lodged against him,[20] purported right to a speedy revocation hearing,[21] and purported right to be unshackled during a juryless revocation hearing where the District Court expressed a "security concern."[22] Petlock claims he should been given an opportunity to attempt to suppress evidence and to present expert testimony to assist in his defense against the charge that he violated his supervised release. But, he fails to identify—and this Court does not perceive—any grounds for suppressing his state court conviction secured via his own guilty plea, nor the relevance of any expert testimony.

---

[19] Appellant's Br. 35.

[20] *See* Fed. R. Crim. P. 32.1(a)(1) & (b)(1)(A) (providing for prompt hearings when the person is taken into federal "custody," not when a warrant is issued); 18 U.S.C. § 3006A(a)(1)(E) (providing a right to counsel for those charged with violating a supervisory condition, but not requiring it at the time a petition is filed).

[21] *See United States v. Tippens*, 39 F.3d 88, 89 (5th Cir. 1994) (per curiam) ("[T]he execution of a warrant for violation of supervised release is not subject to the Sixth Amendment's speedy trial requirement."); *cf. Carchman v. Nash*, 473 U.S. 716, 731 n.10 (1985) (explaining that the Supreme Court has never held that a person subject to a probation-violation detainer or a parole-violation detainer is entitled to a speedy revocation hearing).

[22] Supp. App. 37; *see United States v. Ayala*, 917 F.3d 752, 763 (3d Cir. 2019) (In making shackling decisions, "[d]istrict courts need 'latitude' to make 'individualized security determinations,' because they are 'uniquely positioned and qualified,' to determine a defendant's potential security risk (or lack thereof).") (citations omitted).

6

Relatedly, Petlock has asked us to review his District Court filing entitled "Brief in Support of a Continuance and his Request for Documents."[23] We do not permit incorporation by reference to district court filings, so any arguments in that document are waived.[24] Even if they had been properly raised, they would fail; they present the same unsupported assertions that Petlock should have received various documents, an opportunity to suppress evidence, and the aid of an expert.

Still others of Petlock's arguments fail because, even if they were valid, he cannot demonstrate plain error. He complains that he was not permitted to file a reply brief in support of his amended motion to dismiss the revocation petition and a host of other documents. Petlock, however, did not request the opportunity to file these documents and cannot show plain error, having failed to identify any authority for his claimed entitlement to file them.[25]

Finally, Petlock argues that the District Court erred in not reducing his violation of supervised release sentence for supposedly overserving his state sentence. The Sentencing Guidelines provide that "the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court

---

[23] Appellant's Br. 51.

[24] *States v. Gonzalez*, 905 F.3d 165, 206 n.18 (3d Cir. 2018).

[25] *See United States v. Cruz*, 757 F.3d 372, 380 (3d Cir. 2014) (applying plain error review where the defendant "failed to avail himself of several opportunities to oppose the Government's motion"); *United States v. Turner*, 677 F.3d 570, 575 (3d Cir. 2012) ("The absence of controlling precedent forecloses Turner's plain error argument on this issue.").

determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons."[26] However, this provision applies only to an "undischarged" term of imprisonment,[27] and when the District Court sentenced Petlock, he was not subject to any undischarged term, having completely served his state court sentence.

For these reasons, we will affirm.

---

[26] U.S.S.G. § 5G1.3(b)(1).
[27] *Id.*; *see also United States v. Lucas*, 745 F.3d 626, 629 n.4 (2d Cir. 2014) (collecting cases).